IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| ANTHONY WINGFIELD, | § | |
| Institutional ID No. 1896078, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:14-CV-182-BL |
| | § | |
| Director of TDCJ, Officer FNU Carlisle, | § | |
| and Unknown Female | § | |
| Count Room Occupant,[1] | § | |
| Defendants. | § | Assigned to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Anthony Wingfield, proceeding *pro se* and *in forma pauperis*, filed his complaint on November 17, 2014, pursuant to 42 U.S.C. § 1983. (Doc. 1). The District Judge transferred the case to this Court for judicial screening pursuant to 28 U.S.C. § 636(c). (Doc. 6). On November 5, 2015, Plaintiff testified at an evidentiary hearing before this Court, pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). (*See* Docs. 7, 8).[2]

### I.

According to his complaint and testimony at the *Spears* hearing, Plaintiff has been a below-the-knee amputee on one leg for more than twenty-five years. He was first confined by the Texas Department of Criminal Justice (TDCJ) in 1989, at which time he already wore a prosthesis. At each TDCJ prison unit to which Plaintiff has been transferred over the years since 1989, Plaintiff has been assigned to a bottom bunk. He testified that when he would switch units on occasion, either his medical file would accompany him indicating his requirement of a bottom bunk, or upon intake at a new unit, a physical exam would be conducted, which would quickly reveal his

---

[1] The docket sheet erroneously indicates "unknown female *courtroom* occupant." The individual Plaintiff wishes to sue worked in the *count* room of the Middleton Unit.
[2] At his *Spears* hearing, Plaintiff indicated his consent to proceed before a United States Magistrate Judge. However, as no Defendants have yet made an appearance, none has been served or given the opportunity to consent. Accordingly, this Court transfers the case back to the District Judge.

amputation and prosthesis. That is, almost immediately upon arrival at a new prison unit, officials would be aware of Plaintiff's physical state and need for a bottom bunk.

Plaintiff testified that he arrived at TDCJ's John Middleton Unit on December 20, 2013. He was immediately assigned to Administrative Segregation (AdSeg), commonly referred to as solitary confinement. Plaintiff believes his assignment to AdSeg was either because Middleton had no available bottom bunks in ordinary cells or out of some animus on the part of Middleton "count room" employees—the prison employees responsible for making room and bunk assignments. Plaintiff indicated that new inmates to Middleton were routinely treated particularly harshly, an attempt, Plaintiff believes, to "show new inmates who runs this show."

Plaintiff did not want to be in AdSeg; he testified that time in AdSeg was damaging to his "fragile mental state." Plaintiff allegedly spent three days in AdSeg, after which he was reassigned to general population (gen-pop). When he was put into gen-pop on December 23, 2013, Plaintiff was told he had a top bunk assignment. Plaintiff immediately told the nearest corrections officer, Officer Carlisle, that he was unable to climb up to the top bunk because of his amputation and prosthesis. Officer Carlisle apparently went to speak to a "female employee" in the count room, who told Carlisle that Plaintiff was properly assigned to a top bunk so he must remain assigned to a top bunk. Carlisle relayed this message to Plaintiff, who found himself in a bind: if he were to refuse this housing and top bunk assignment, he would be subject to penalties including more time in AdSeg, which Plaintiff detested; if he were to accept the housing assignment, he might become injured climbing into the top bunk.

Seeing no other way out, Plaintiff accepted the top bunk assignment. Plaintiff testified that at least three times he attempted to informally ask for a bottom bunk assignment from various corrections officers, but each time his request was rebuffed. Plaintiff testified he then filed an I-60 form, a more formal complaint, requesting he be assigned to a bottom bunk. Plaintiff states he received no response from any Middleton official to his I-60 submission.

Plaintiff "managed the best [he] could" climbing in and out of the top bunk for three days. However, on December 26, 2013, while climbing into his top bunk, Plaintiff testified he slipped and fell to the concrete floor of the prison. He landed on his lower back and shoulder, his prosthesis "flying off" from the force of the impact. Emergency medical staff were called and Plaintiff was stretchered out of gen-pop and into the medical ward. Plaintiff was given pain medication and x-rays were scheduled for the following day. Those x-rays revealed no broken bones, but Plaintiff alleges he continued to experience great pain in his lower back and numbness and tingling in his lower extremities. Plaintiff testified that he has undergone at least one more round of x-rays or other tests to examine the possibility of nerve damage in his back and neck.

## II.

In an *in forma pauperis* prisoner civil rights action against a governmental entity, officer, or employee, the Court is required under 28 U.S.C. §§ 1915–1915A to dismiss the complaint or any portion of the complaint which is frivolous or malicious or fails to state a claim upon which relief may be granted. *See Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (internal quotation marks omitted); *accord Neitzke*, 490 U.S. at 327. "A complaint is factually frivolous when the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Harris*, 198 F.3d at 156 (internal quotation marks and citations omitted).

The Court must construe *in forma pauperis* complaints liberally, particularly in the context of dismissals under 28 U.S.C. § 1915(e)(2)(B). *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). Still, a civil rights plaintiff must support his claims with specific facts

demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).

Liberally construing Plaintiffs allegations, both in his written complaint and his testimony at the *Spears* hearing, the Court finds that Plaintiff has sufficiently stated a claim such that Defendants in this case should file an answer or other responsive pleading. Plaintiff alleged specific facts which are not fantastic or delusional. He stated that individuals in the count room deliberately assigned him to a top bunk, despite the fact they knew he was an amputee and required a bottom bunk, which had been given to him at every other TDCJ facility to which he had been assigned. Further, Plaintiff has asserted a violation of a recognized legal interest, namely his serious medical needs.

It appears to the Court, then, that Plaintiff has alleged facts which may indicate that certain Middleton Unit employees in the count room or elsewhere violated his constitutional rights by displaying deliberate indifference to Plaintiff's serious medical needs. Accordingly, Plaintiff has brought claims which survive judicial screening under 28 U.S.C. §§ 1915–1915A.

The Court notes, however, that at his *Spears* hearing Plaintiff testified that he did not in fact wish to sue Officer Carlisle. Plaintiff stated that Carlisle "was more than helpful," in talking with the count room employees and attempting to help Plaintiff have his complaints heard. The only reason Carlisle was added as a defendant in this case was so he could testify as to the circumstances surrounding his conversation with the female count room employee. Accordingly, it is appropriate for Carlisle to be removed as a Defendant in this case.

### III.

Accordingly, it is **RECOMMENDED** that Officer Carlisle be removed as a defendant in this case.

It is further **RECOMMENDED** that the remaining defendants be ordered to submit answers or other responsive pleadings.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated November /3 , 2015.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**